John W. KURE, Appellant
(Plaintiff below),

v.

CHEVROLET MOTOR DIVISION, J. A.
Chevrolet-Cadillac, Inc. and Tyrrell
Chevrolet, Appellees (Defendant below).

No. 4859.

Supreme Court of Wyoming.

June 26, 1978.

Philip P. Whynott, Cheyenne, for appellant.

John W. Pattno, Cheyenne, for appellees, Tyrrell Chevrolet and Whisler Chevrolet Co.

Peter J. Mulvaney, Cheyenne, for appellee, Chevrolet Motor Division.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

RAPER, Justice.

This appeal, pursued by plaintiff-appellant, arises from entry of judgment by the district court in favor of all defendants, save one, at the close of plaintiff's case.

Plaintiff asserts the judgment in favor of defendants, Chevrolet Motor Division and Tyrrell Chevrolet, was error and that the damages awarded against defendant J. A. Chevrolet were insufficient. We shall reverse the district court judgment as to the action against Chevrolet Motor Division and J. A. Chevrolet and otherwise affirm.

On March 1, 1975, plaintiff took delivery of a 1975 Chevrolet Corvette from Whisler Chevrolet in Rock Springs, Wyoming. On July 3, 1975, during a trip from Cheyenne to Rock Springs, both fan belts on the engine broke near Rawlins, Wyoming, causing the engine to severely overheat. The car was then towed from a service station near Rawlins to the J. A. Chevrolet Company in Rawlins where the engine was repaired. On August 16, 1975, the same day plaintiff picked the car up from J. A. Chevrolet, the engine overheated again after being driven less than 20 miles, this time because of sudden oil loss caused by improper repair work done by J. A. Chevrolet. Plaintiff then had the car towed to Tyrrell Chevrolet in Cheyenne, where, following additional repair work, it was returned to him on September 25, 1975. Because of continuing mechanical problems, plaintiff's vehicle was returned to Tyrrell Chevrolet for repair work on September 26, October 6, November 3, and December 12, 1975. Never at any time was plaintiff charged for any of the work involved, it being treated by all defendants, particularly Chevrolet Motor Division, as warranty repair work. Being still dissatisfied with the vehicle, plaintiff put it into storage and eventually sold it in August, 1976.

On April 26, 1976, plaintiff filed his action herein against Chevrolet Motor Division, J. A. Chevrolet Cadillac, Inc. of Rawlins, Whisler Chevrolet of Rock Springs, and Tyrrell Chevrolet of Cheyenne, alleging breach of express warranty, § 34–21–230, W.S.1977, breach of implied warranty, § 34–21–231, W.S.1977, and deceptive trade practices, § 40–12–105, W.S.1977.[1] Follow-

---

1. Section 34–21–230, W.S.1977,* § 2–313 of the Uniform Commercial Code, provides:

"(1) Express warranties by the seller are created as follows:

"(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

"(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

"(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

"(2) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."

Section 34–21–231, W.S.1977,* § 2–214 of the Uniform Commercial Code, provides:

"(1) Unless excluded or modified (section 2–316 [§ 34–21–233]), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

"(2) Goods to be merchantable must be at least such as:

"(a) pass without objection in the trade under the contract description; and

"(b) in the case of fungible goods, are of fair average quality within the description; and

"(c) are fit for the ordinary purposes for which such goods are used; and

"(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

"(e) are adequately contained, packaged, and labeled as the agreement may require; and

"(f) conform to the promises or affirmations of fact made on the container or label if any.

"(3) Unless excluded or modified (section 34–2–316 [§ 34–21–233]), other implied warranties may arise from course of dealing or usage of trade."

Section 40–12–105, W.S.1977, of the Wyoming Consumer Protection Act, in those parts relied on by plaintiff is as follows:

"(a) A person engages in a deceptive trade practice unlawful under this act [§§ 40–12–101 to 40–12–112] when, in the course of his business and in connection with a consumer transaction, he knowingly:

ing presentation of plaintiff's case to the court only, the district judge granted defense motions on all three allegations in favor of Chevrolet Motor Division, Whisler Chevrolet and Tyrrell Chevrolet, and then entered judgment against J. A. Chevrolet Cadillac in the sum of $2,600.00. Plaintiff has appealed from the judgment except for that portion entered in favor of Whisler Chevrolet of Rock Springs.

■■■ While not properly denominated as such, the defendants moved for dismissal of plaintiff's action and claims, pursuant to Rule 41(b), in pertinent part:

"(1) By Defendant. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. *After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief.* The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. *If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a).* Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in the rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits. \* \* \* " (Emphasis added.)

"(i) Represents that merchandise has a source, origin, sponsorship, approval, accessories or uses it does not have;

\*    \*    \*    \*    \*    \*

"(iii) Represents that merchandise is of a particular standard, grade, style or model, if it is not;

\*    \*    \*    \*    \*    \*

\* The compilers of W.S.1977 have unfortunately abandoned the numbering system of the Uniform Commercial Code, making cross-referenc-

This court in *Angus Hunt Ranch, Inc. v. REB, Inc.,* Wyo.1978, 577 P.2d 645, citing *Arbenz v. Bebout,* Wyo.1968, 444 P.2d 317, has set out an approved approach to be used by a trial judge in considering such a motion, which we follow. When plaintiff's proof fails in some aspect, the motion must be granted. When plaintiff's evidence is overpowering, the trial judge's work is easy and the motion should be denied. When the plaintiff has presented only a prima facie case founded on unimpeached evidence, the district judge should not grant the motion, even though he sits in the stead of a jury as the trier of facts and may not feel at that juncture of the trial that plaintiff has sustained his proof burden. When in the latter position, the trial judge should accept the Rule's alternative, whereby he "\* \* \* may decline to render any judgment until the close of all the evidence \* \* \* " and deny the motion.[2]

■■ With that standard confronting the trial court and keeping in mind that such a dismissal on the merits provides a means to dispose of a case at the first opportunity, *Brydon v. Brydon,* Wyo.1951, 365 P.2d 55, we must also consider our review of the trial court's judgment. We are provided a guide by the Rules. Rule 41(b) requires that the trial court make findings as provided in Rule 52(a), which Rule provides:

"(a) General and Special Findings by Court. Upon the trial of questions of fact by the court, or with an advisory jury, it shall not be necessary for the court to state its findings, except generally for the plaintiff or defendant, unless one of the parties request it before the introduction of any evidence, with the

ing to the origin and important associated works difficult, as well as inconvenient.

2.  Arbenz peripherally holds to the rule that this court must assume the evidence in favor of the successful party as true and every favorable inference which may be reasonably and fairly drawn from it must be indulged in is not applicable under Rule 41(b)(1) motions. That is understandable because none of the successful defendant's evidence is before the court.

view of excepting to the decision of the court upon the questions of law involved in the trial, in which case the court shall state in writing its special findings of fact separately from its conclusions of law; provided, that without such request the court may make such special findings of fact and conclusions of law as it deems proper and if the same are preserved in the record either by stenographic report or by the court's written memorandum, *the same may be considered on appeal.* Requests for findings are not necessary for purposes of review. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of court."[3] (Emphasis added.) Rule 41(a) W.R.C.P., makes it mandatory that when a motion to dismiss is granted at the end of the plaintiff's case, the trial judge makes findings of fact and conclusions of law. The requirement of a request, as set out in Rule 52(a), supra, does not in that instance apply.

Another standard we must apply is that the evidence must be considered in the light most favorable to the plaintiff. *Angus Hunt Ranch, Inc. v. REB, Inc., supra.* The conclusions of law are freely reviewable. *U. S. v. Mississippi Valley Generating Co.,* 1961, 364 U.S. 520, 526, 81 S.Ct. 294, 297, 5 L.Ed.2d 268.

■ The trial judge in this case did not make formal findings of fact and conclusions of law. The court did, however, set out its findings and conclusions orally, preserving them by stenographic reporting in the transcript before us as part of the record. That meets the technical requirements of Rule 52(a), though we would, for purposes of review, prefer the formal variety. We shall align his findings into this opinion, as necessary.

■ Accompanying plaintiff's vehicle when delivered to him was an express contractual warranty, provided by Chevrolet Motor Division, warranting the car for a specified period against defects in material or workmanship and agreeing to correct any such defects within a reasonable time.[4]

---

3. Rule 52(a), W.R.C.P., varies from Rule 52(a), F.R.C.P., the latter being as follows:

"(a) *Effect.* In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b)."

4. The full text of the warranty is as follows:
"1975 CHEVROLET
NEW CAR WARRANTY
"WHAT IS COVERED
"Chevrolet Motor Division, General Motors Corporation, warrants to owners of 1975 Chevrolet passenger cars which are registered and normally operated in the United States or Canada:

" • The Chevrolet dealer of the owner's choice will make any repairs on any part of the car, except tires, made necessary because of defects in material or workmanship for 12 months or 12,000 miles of use, whichever first occurs, from the date the car is delivered to the first retail purchaser or first placed in service as a demonstrator or company car, whichever is earlier, and will make any needed service adjustments during the first 90 days of use.

" • Warranty repairs and needed service adjustments will be performed without charge to the owner by the Chevrolet dealer at its place of business within a reasonable time after delivery of the car to the dealer.
"WHAT IS NOT COVERED
" • Repairs and service adjustments required because of misuse, negligence, alteration, accident, or lack of reasonable and proper maintenance are not covered, nor are the replacement of maintenance items (such as spark plugs, positive crankcase ventilation valves, filters, brake and clutch linings) made in connection with normal maintenance services.

" • Loss of time, inconvenience, loss of use of the car or other matters not specifically included are not covered.

In order for the plaintiff to prevail, he must show first that there was a defective product, second, how it was defective, and third, that a defendant is responsible under Wyoming law. *Colorado Serum Company v. Arp*, Wyo.1972, 504 P.2d 801, 805.

There is apparently no dispute that the product here was defective and the evidence demonstrates how it was defective. The trial judge held there was no liability as to Chevrolet Motor Division or Tyrrell Chevrolet because neither ever refused to do any work requested nor charged plaintiff for any parts replaced or work done on his vehicle, pointing out that the warranty did not assure that the vehicle was free of defects but only that defective items would be repaired or replaced without charge.[5]

Because Chevrolet Motor Division undertook to perform all work requested by the plaintiff without charge, it must be concluded that all defects fell within its warranty. We hold the trial court applied an erroneous conclusion of law in dismissing the case against the Chevrolet Motor Division. The evidence of the plaintiff clearly shows that there was a breach of the manufacturer's express warranty based upon the generally accepted rule that an unsuccessful effort to remedy defects found to exist renders the seller-warrantor liable; the buyer is not bound to allow him a second opportunity or permit him to tinker with the article indefinitely in the hope that it may ultimately be made to comply with the warranty. *Schroeder v. Fageol Motors, Inc.*, 1974, 12 Wash.App. 161, 528 P.2d 992, 995, aff'd. in part, rev'd, in part on other grounds, 86 Wash.2d 256, 544 P.2d 20; *Judd Construction Company v. Bob Post, Inc.*, Colo.App.1973, 516 P.2d 449; *Steele v. J. I. Case Co.*, 1966, 197 Kan. 554, 419 P.2d 902; *Kaiser Cement & Gypsum Corporation v.*

*Allis-Chalmers Manufacturing Company*, 1973, 35 Cal.App.3d 948, 111 Cal.Rptr. 210; *Seely v. White Motor Company*, 1965, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145, reh. den.; *Allen v. Brown*, 1957, 181 Kan. 301, 310 P.2d 923; *Rice v. Chrysler Motors Corporation*, N.D.1972, 198 N.W.2d 247; *General Motors Corporation v. Earnest*, 1966, 279 Ala. 299, 184 So.2d 811; *Ford Motor Company v. Gunn*, 1971, 123 Ga.App. 550, 181 S.E.2d 694, reh. den.; *Cox Motor Car Company v. Castle*, Ky.App.1966, 402 S.W.2d 429; *Beal v. General Motors Corporation*, D.Del.1973, 354 F.Supp. 423; *Jones & McKnight Corporation v. Birdsboro Corporation*, N.D.Ill.1970, 320 F.Supp. 39. Annotation, "Construction and effect of standard new motor vehicle warranty," 99 A.L.R.2d 1419, with Later Case Service; 77 C.J.S. Sales §§ 340, 350, pp. 1235–1236, 1256. For a case under which plaintiff's proof failed, see *Henderson v. Ford Motor Company*, Tex.Civ.App.1977, 547 S.W.2d 663.

All the foregoing cited cases and authorities disclose that at some point in time after the purchase of a new automobile, it must be put in good running condition and the seller does not have an unlimited time for performance of its warranty obligation. A failure to correct the defect within a reasonable time, as promised, renders the warrantor liable for a breach of warranty. If the case went no further than plaintiff's evidence, it has been shown that the plaintiff-buyer repeatedly sought performance and failed to receive it and has thus established a broken promise entitling him to damages. The motion to dismiss was improvidently granted as to the Chevrolet Motor Division.

There is no evidence of record to indicate that any dealer individually gave

---

"• Any car registered and normally operated outside the United States or Canada. The warranty for these cars shall be that authorized for the county in which the car is registered and normally operated.

"*Chevrolet Motor Division, General Motors Corporation, does not authorize any person to create for it any other obligation or liability in connection with these cars.*" (Footnote omitted.)

5. The trial judge found that J. A. Chevrolet Cadillac was liable for the reason that its defective repair set in motion the defects rendering it unfit for use. He gave judgment to plaintiff against that company for the vehicle's value less the sale price depreciated because of its condition in the sum of $2,600.00. That defendant was in default and not represented at the trial.

any separate warranty. Rather, the evidence presented by plaintiff indicates that the only warranty in existence was that furnished by the Chevrolet Motor Division, under which all work was done and paid for by that Company, it assuming complete responsibility in that regard. Each dealer, by specific written agreement with the manufacturer, was authorized by written agreement to perform warranty work at the expense of the manufacturer, Chevrolet Motor Division. As far as the buyer was concerned, the manufacturer held out every dealer as its representative and agent to perform warranty work. The situation could possibly be different if a dealer had gone outside the terms of the express warranty and assumed some express or implied warranty of its own [6] but that is not apparent in the plaintiff's evidence.

Authority indicates and we hold that the dealers, both the original (not a party to this appeal) and those involved in repairs, as far as plaintiff's evidence shows, have no liability to plaintiff; they, in all instances, were acting as representatives of the manufacturer, none having adopted the manufacturer's warranty nor given any separate warranty of their own. *Courtesy Ford Sales, Inc., v. Farrior,* 1974, 53 Ala. App. 94, 298 So.2d 26, reh. den., cert. den. 292 Ala. 718, 298 So.2d 34; *Media Production Consultants, Inc. v. Mercedes-Benz of North America,* 1972, 262 La. 80, 262 So.2d 377, reh. den.; *Hall v. Everett Motors, Inc.,* 1960, 340 Mass. 430, 165 N.E.2d 107; *Cochran v. McDonald,* 1945, 23 Wash.2d 348, 161 P.2d 305; *Wallace v. McCampbell,* 1941, 178 Tenn. 224, 156 S.W.2d 442; *Cool v. Fighter,* 1927, 239 Mich. 42, 214 N.W. 162.[7]

Those holdings are consistent with the law of agency. An agent who contracts on behalf of a disclosed principal, in the absence of some other agreement to the contrary or other circumstances showing that he has expressly or impliedly incurred or intended to incur personal responsibility, is not liable to the other contracting party. *Thomas v. Gonzelas,* 1958, 79 Wyo. 111, 331 P.2d 832. The Restatement of the Law, 2d, § 329, states the same rule in a slightly different fashion: "Unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract." Even though he may be without authority in the first instance, the liability of an agent for a breach of warranty may be terminated through ratification by a principal. Restatement of the Law, Agency, 2d, § 338. In the instant case, the Chevrolet Motor Division has paid the dealer for all warranty work performed on the plaintiff's vehicle, thereby ratifying any warranty possibly made by an agent, express or implied.

We realize that within the exhibits is a copy of the franchise agreement between the Chevrolet Motor Division and its dealers, providing that the dealer is not made the agent nor legal representative of Chevrolet. However, that agreement is between the dealer and Chevrolet, not between Chevrolet and the buyer. The warranty furnished the buyer specifically instructs him to deliver his vehicle to any of Chevrolet's dealers for the performance of warranty work. A principal is bound by the acts of an agent performed with apparent authority where the third person (buyer here) acted upon reliance of apparent authority held out by the principal. *McConnell v. Dixon,* 1951, 68 Wyo. 301, 233 P.2d 877; *Ulen v. Knecttle,* 1936, 50 Wyo. 94, 58 P.2d 446, 111 A.L.R. 565; generally see Restatement of the Law, Agency, 2d, Ch. 6, §§ 140 through 185.

We cannot reach any question of damages as to the Chevrolet Motor Division

---

6. See, for example, *King v. O'Rielly Motor Company,* 1972, 16 Ariz.App. 518, 494 P.2d 718, reh. den., rev. den. where an auto, wrecked by the dealer and represented as new was not under manufacturer's warranty but dealer was solely liable.

7. For a case in which and how the dealer adopted the manufacturer's automobile warranty, see *Allen v. Brown,* 1957, 181 Kan. 301, 310 P.2d 923. Allen confirmed the rule we cite that a mere dealer is not bound by implied warranty. In *Breen v. Cohen Auto Co., Inc.,* 1973, 75 Misc.2d 927, 349 N.Y.S.2d 573, the court held that a dealer can assume a liability for completely refusing to do warranty work. A dealer cannot frustrate a warranty.

because of the trial court's dismissal as to that corporation. Neither can we confirm the trial court's findings and conclusions in its determination of damages against J. A. Chevrolet Cadillac, since the judgment against that company was improvidently granted and inconsistent with this court's holding herein, with respect to the liability of dealers under the facts of this case.[8]

We make no holding with respect to recovery for a single instance of inadequate or unworkmanlike repair done under warranty. In the action before us, the plaintiff seeks recovery for a total economic loss due to a wholly defective automobile that apparently has not been and cannot be satisfactorily corrected within a reasonable time. The manufacturer has paid for all work, both satisfactory and unsatisfactory, and has assumed responsibility for the result, warranting that the work will be properly done by its franchised dealers, and has, in fact thereby ratified their agency and authority to do so.

There was no evidence presented by plaintiff of any implied warranty nor evidence of any alleged deceptive trade practices. On the basis of plaintiff's evidence, we agree with the trial court in its findings in those regards. It must be understood that this opinion is based only on showings made by the plaintiff. The evidence presented by Chevrolet may lead to a different ultimate result.

**8.** On the question of damages, see generally § 34–2–714, W.S.1957, 1975 Cum.Supp. [§ 34–21–293, W.S.1977]; if applicable to total facts developed, § 34–2–715, W.S.1957, 1975 Cum. Supp. [§ 34–21–294]; and, if applicable, § 34–2–719, W.S.1957, 1975 Cum.Supp. [§ 34–21–298, W.S.1977], Uniform Commercial Code, Comments and Annotations, 1A Uniform Laws Annotated, §§ 2–714, 2–715 and 2–719; and, White and Summers, U.C.C. HB, §§ 10–1 through 10–4 and cases cited in this opinion. We make no suggestion as to how the trial court will eventually employ applicable rules.

**9.** It is clear that the plaintiff is entitled to only one recovery for his loss. Double recovery might result if the judgment against J. A. Chevrolet is allowed to stand, and that is not favored by the courts. *Western National Bank of Casper v. Harrison,* Wyo.1978, 577 P.2d 635. Where reversal of a judgment eliminates all basis for recovery against a non-appealing par-

██ The trial court's dismissal of plaintiff's case and claim against Tyrrell Chevrolet is affirmed. The judgment against J. A. Chevrolet Cadillac, Inc. is reversed and vacated and the trial court instructed to enter judgment in favor of that company and against plaintiff.[9] The judgment against Chevrolet Motor Division is reversed and the case remanded for a completion of the trial to afford defendant Chevrolet an opportunity to put on its defense and for such other proceedings as may be proper, consistent with the court's opinion herein.

ty, as well as against the party who has appealed, the benefit of the reversal will be made available to all alike, either upon application or upon the appellate tribunal's own volition. An appellate court has the power and the duty to make such ultimate disposition of a case as justice requires. This solicitude is expressly extended to non-appealing parties, who in all justice should be extended the benefits of a supreme court ruling. *E & K Agency, Inc. v. Van Dyke,* 1972, 60 N.J. 160, 286 A.2d 706. Where the rights of the parties are so intermingled or where the error permeates the entire case, the court may reverse as to non-appealing parties in the interest of justice. *Continental Casualty Co. v. Phoenix Construction Co.,* 1956, 46 Cal.2d 423, 296 P.2d 801, 57 A.L.R.2d 914, reh. den.; *Merryman v. Goins,* 1942, 190 Okl. 442, 124 P.2d 729. In such cases, the achievement of equity is the goal. *Joyce v. Zachary,* Ky.1968, 434 S.W.2d 659.